UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN TIERNEY COCKBURN,

Plaintiff,

v.

SWS INDUSTRIES, INC., *et al.*,

Defendants.

Case No. C10-1566RSL

ORDER REGARDING
MOTIONS TO DISMISS

## **I. INTRODUCTION**

This matter comes before the Court on a motion to dismiss filed by defendants SWS Industries, Inc. d/b/a McGill, Inc. ("SWS"), A.C. Moore Arts & Crafts, Inc. ("Moore"), Notions Marketing Corp. ("Notions"), and Tomsten, Inc., d/b/a Archiver's ("Archiver's"), who comprise four of the eight defendants in this case. A fifth defendant, CreateForLess, LLC filed an "adoption" of the other defendants' motion to dismiss. All five defendants allege that the Court should dismiss the complaint against them for lack of personal jurisdiction. They also seek dismissal of plaintiff's Lanham Act and state law claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

At plaintiff's request, the Court heard oral argument in this matter on June 6, 2011. For the reasons set forth below, the Court grants the motions to dismiss for lack of personal

ORDER REGARDING
MOTIONS TO DISMISS - 1

jurisdiction regarding all moving defendants except SWS, and dismisses some of plaintiff's claims against SWS.

**II. DISCUSSION**

**A.     Background Facts.**

Plaintiff, a professional author and artist who works in Redmond, Washington, creates floral art using paper and other media to create, among other things, three dimensional paper flowers for use in hobbies and crafts. According to her amended complaint, she has developed a unique line of paper punches to enhance her paper floral art and three dimensional paper flowers. She is the owner of the following copyright registrations for original works of authorship: TX 7-136-170 for "Paper Bouquet" registered in February 2010, and TX 6-555-425 for "The Paper Garden – Summer Blooms" registered in May 2006. Amended Complaint at ¶ 24.

In the Spring of 2009, a representative of SWS contacted plaintiff, complimented her work, and inquired about whether plaintiff would be interested in working with SWS to enhance its existing paper punches. Subsequently, SWS offered plaintiff a contract to purchase and manufacture her floral designs. Plaintiff alleges that after the parties failed to reach an agreement, SWS sold its own infringing works to internet and retail customers throughout the United States, including in Washington.

In July 2010, while plaintiff was attending a craft and hobby show in Illinois, she discovered that SWS was promoting a new paper punch line that allegedly included some of plaintiff's flower designs under the name McGill Paper Blossoms. Amended Complaint at ¶ 53. The program included her copyrighted Lily Petal Designs, Geranium Leaf Designs, and Pear Design, and her instructions (the "Infringing Works"). Id. Plaintiff contends that SWS's new line reflected the program plaintiff had discussed with SWS, and included the color scheme she had presented. Id.

SWS is an Illinois corporation with its principal place of business in Marengo, Illinois, approximately 65 miles northwest of Chicago. SWS manufacturers punches used in office

ORDER REGARDING
MOTIONS TO DISMISS - 2

products, industrial supply/hardware, and crafts. Declaration of Wayne Schwartzman, (Dkt. #31-1) at ¶ 5. SWS does not own or operate any retail establishments. Instead, it sells its products to a variety of retail stores throughout the United States and accepts and processes orders through an interactive website. Id. at ¶ 6. During 2010, SWS sold $2,469 worth of its Paper Blossom product line to customers in Washington. Id. at ¶ 11. Sales by SWS in Washington in connection with the five punches that plaintiff claims infringe her copyrights have totaled $710.00: Star Lily ($281.00), Small Geranium Leaf ($41.00), Medium Geranium Leaf ($92.00), Garden Petals ($138.00) and Pear ($158.00).

Archiver's is a Minnesota corporation that operates retail stores, though none in Washington. It sells scrapbooking, paper-crafting, and card-making merchandise. Archiver's has no employees and no physical presence in Washington. In October 2010, Archiver's launched an interactive website to allow sales to customers. In 2010, its sales to Washington customers totaled $997.00. Declaration of Brian Olmstead, (Dkt. #31-3) at ¶ 5. Archiver's purchases products from SWS, including items from its Paper Blossoms line of products. Archiver's resells those products only in its retail stores, not via the internet, and it has never shipped those products to any Washington resident. Id. at ¶ 9.

Notions is a Michigan corporation and a distribution center for crafting merchandise. Except for a single outlet store, it does not operate any retail stores. Declaration of John Van Dyke, (Dkt. #31-4) at ¶ 3. Instead, it sells its merchandise to retail stores that place their order with Notions via the internet. Id. In 2010, approximately 3% of Notions' overall sales were to retail customers in Washington. Id. at ¶ 6. Notions has been a customer of SWS's since 2001. Although it has purchased Paper Blossoms products, Notions has not sold any of those products in Washington or shipped them to customers in Washington. Id. at ¶ 10.

Moore is incorporated in Florida and operates retail stores, though none in Washington. Declaration of Cindy Woodhull, (Dkt. #31-2) at ¶ 3. Moore sells items to customers in Washington through its catalog and via the internet. Although it has purchased SWS Paper

1  Blossoms products, it has not shipped any of those products to any Washington customer. Id. at
2  ¶ 13.
3  CreateForLess, LLC is a limited liability company "organized under the laws" of Oregon.
4  Declaration of Dennis DeYoung, (Dkt. # 39-1) at ¶ 3.[1] The company has no employees or
5  physical presence in Washington. Id. at ¶ 4. CreateForLess has not sold any of McGill's Paper
6  Blossoms in Washington or shipped any of those products to Washington. Id. at ¶ 8. The
7  company has sold other goods to Washington residents via its website. Id. at ¶ 5. The
8  company's president states that before the company was served with the summons and complaint
9  in this case, he had no "familiarity" with plaintiff's name and was unaware of plaintiff's dispute
10 with SWS. Id. at ¶ 6. This order will refer to Moore, Notions, CreateForLess, LLC, and
11 Archiver's collectively as the "retailer defendants."
12 None of the moving defendants is licensed to do business in Washington. None has
13 employees or a physical presence in the state.
14 Plaintiff asserts claims for copyright infringement, violation of the Lanham Act, 15
15 U.S.C. § 1125(a), violation of Washington's Consumer Protection Act, and violation of
16 Washington trade dress and trade name protection. In addition to damages, she seeks a
17 constructive trust and an accounting.

**B.    Personal Jurisdiction.**

Plaintiff has the burden of making a *prima facie* showing of personal jurisdiction. See, e.g., Bourassa v. Desrochers, 938 F.2d 1056, 1057 (9th Cir. 1991) (internal citation omitted). On a motion to dismiss for lack of personal jurisdiction, the Court must assume that the allegations in the complaint are true unless contravened. See, e.g., Dole Food Co., Inc. v. Watts, 303 F.3d

---

[1] CreateForLess, LLC initially filed its motion to dismiss without the DeYoung declaration, then moved on February 10, 2011 for leave to file the declaration, which the Court granted. Although the declaration was filed eleven days before plaintiff filed her response to CreateForLess's motion to dismiss, plaintiff's response does not address the declaration or any facts specific to CreateForLess.

ORDER REGARDING
MOTIONS TO DISMISS - 4

1104, 1108 (9th Cir. 2002).

The exercise of jurisdiction must comport with the state's long arm statute, and with the constitutional requirement of due process. See Omeluk v. Langsten Slip & Batbyggeri, 52 F.3d 267, 269 (9th Cir. 1995) (internal citation omitted). "Because the Washington long arm statute reaches as far as the Due Process Clause, all we need to analyze is whether the exercise of jurisdiction would comply with due process." Id. (internal citations omitted). For a forum state to have personal jurisdiction over an out-of-state defendant, that defendant must "have certain minimum contacts with the forum state, such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The due process requirements ensure that individuals have "fair warning that a particular activity may subject [them] to jurisdiction of a foreign sovereign." Shaffer v. Heitner, 433 U.S. 186, 218 (1977).

Where, as in this case, general jurisdiction is undisputedly lacking, a court may nevertheless exercise "limited" or "specific" personal jurisdiction depending upon "the nature and quality of the defendant's contacts in relation to the cause of action." Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). The Ninth Circuit utilizes a three-part test to analyze specific jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)).

The law regarding when commercial activity over the internet constitutes purposeful

ORDER REGARDING
MOTIONS TO DISMISS - 5

availment is "still developing." Qwest Communications Intern'l, Inc. v. Sonny Corp., 2006 U.S. Dist. LEXIS 29832 at *4 (W.D. Wash. 2006). In tort cases,[2] courts "typically inquire whether a defendant purposefully directs his activities at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (internal citation and quotation omitted). The "purposeful availment" element imposes three requirements: "'the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" Id. (quoting Schwarzenegger, 374 F.3d at 803).

In addition to the effects test, the Ninth Circuit has approved a sliding scale analysis that evaluates how interactive the website is for purposes of determining its jurisdictional effect. Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997) ("In sum, the common thread, well stated by the district court in *Zippo*, is that the 'likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet.'") (quoting Zippo Mfg. Co. v. Zippo Dot Com, 952 F Supp. 1119, 1124 (W.D. Pa. 1997)). In this case, defendants maintained interactive websites that allowed them "to maintain some ongoing contact with the forum state." Boschetto v. Hansing, 539 F.3d 1011, 1018 (9th Cir. 2008). They also sold a limited number of products, albeit not the allegedly infringing ones, to Washington residents. However, as a court in this district recently explained, courts in the Ninth Circuit have required "something more than the mere operation of a website that is accessible by consumers in the forum district." Blue Nile Inc. v. Ideal Diamond Solutions, Inc., 2011 U.S. Dist. LEXIS 20917 at *8-9 n. 4. (W.D. Wash. March 1, 2011). The retailer defendants' conduct with Washington was minimal,

---

[2] A claim of willful copyright infringement is considered a tort claim. Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010).

involving a small amount of sales of non-infringing products, which is insufficient to show that they directed their activity towards Washington "in a substantial way." Cybersell, Inc., 130 F.3d at 418.

Moreover, the Ninth Circuit has recently explained that regardless of whether the case involves use of the internet, "the question remains whether the defendant's conduct was expressly aimed at the forum." Brayton Purcell LLP, 606 F.3d at 1129. Express aiming can occur when the defendant, knowing of plaintiff's existence and its forum state, places itself in competition with plaintiff in plaintiff's forum state. See, e.g., id. (citing Panavision Internat'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998) (explaining that defendant's conduct, "as he knew it likely would, had the effect of injuring Panavision in California where Panavision has its principal place of business and where the movie and television industry is located.")); see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000) (defining express aiming as "wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."); Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1020 (9th Cir. 2002) (express aiming must include "conduct directly targeting the forum."). In this case, despite the maintenance of interactive websites, none of the retailer defendants knew about plaintiff's existence, her dispute with SWS, or that she was a Washington resident. Van Dyke Decl. at ¶ 8; Olmstead Decl. at ¶ 7; Woodhull Decl. at ¶¶ 8, 11. Although a disavowal of knowledge of plaintiff's residence might not always be sufficient to defeat personal jurisdiction, in this case, plaintiff was a third party individual about whom the retailer defendants could not have anticipated a dispute. Nor is there any evidence that plaintiff or any of the retailer defendants sell competing products in Washington. Therefore, the retailer defendants did not cause harm that they knew would be felt in Washington, so plaintiff has failed to establish the purposeful availment prong of the test. The Court grants the motion to dismiss the claims against the retailer defendants for lack of personal jurisdiction.

In contrast, SWS knew that plaintiff was a Washington resident, and it sold its competing

products to Washington residents. For those reasons, the allegations against SWS are sufficient to satisfy the express aiming prong. Moreover, it was foreseeable that plaintiff would be harmed in Washington by the infringement of her copyrights, including suffering competitive harms. Plaintiff has also sufficiently shown that her injury arises out of SWS's forum related activities.[3] In fact, SWS concedes that the first two prongs of the three part test have been satisfied.

Instead of disputing the first two prongs, SWS contends that the exercise of personal jurisdiction over it would be unreasonable. Defendant "must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Gordy, 95 F.3d at 835 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). In considering reasonableness, the Court considers and weighs seven factors: (1) the extent of defendant's purposeful contacts; (2) the burden on defendant of having to defend in Washington; (3) the extent to which jurisdiction conflicts with the sovereignty of defendant's resident state; (4) Washington's interest in adjudicating the dispute; (5) which forum is the most efficient for resolution of the dispute; (6) plaintiff's interest in choosing the Washington forum; and (7) the existence of an alternative forum to adjudicate plaintiff's claims. See, e.g., FDIC British-American Ins. Co., 828 F.2d 1439, 1443 (9th Cir. 1987). Regarding the first factor, SWS purposefully injected itself into Washington by making sales to Washington residents. However, it appears that those sales were a small fraction of its total sales. Although the small amount of sales might render the first factor neutral, see, e.g., CE Distrib., LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004), the fact that a SWS employee initiated communications with plaintiff in Washington means that this factor favors plaintiff, as SWS concedes. Motion at p.

---

[3] In determining whether defendant's contact with Washington "gives rise" to the current cause of action, the Court applies a "but for" causation standard. See, e.g., Bancroft & Masters, Inc., 223 F.3d at 1088. A harm can arise from forum related activities if the effect of those activities is felt in the forum. See, e.g., Gordy v. Daily News, L.P., 95 F.3d 829, 834-35 (9th Cir. 1996) (holding that a claim arose out of forum related activities because the "tortious effect" was felt in the forum state).

ORDER REGARDING
MOTIONS TO DISMISS - 8

14. SWS argues that the second factor, the burden of defending in Washington, tips heavily in its favor because it has no offices or employees in Washington. Its president travels only occasionally to Washington. Schwartzman Decl. at ¶ 10 ("I have made a few business trips to the State of Washington in my capacity as SWS's president, but in the 25 years I have been SWS's president, my best estimate is that I have spent less than 7 days in the State."). Although this factor weighs in SWS's favor, it does not weigh heavily in light of the modern advances in transportation and communication and the likely limited need for travel to this district. The third factor "concerns the extent to which the district's exercise of jurisdiction . . . would conflict with the sovereignty" of defendant's home state of Illinois. Toeppen, 141 F.3d at 1323. This factor weighs in plaintiff's favor because Illinois' sovereignty is not implicated by jurisdiction here. 28 U.S.C. § 1338(a) confers exclusive subject matter jurisdiction in a copyright action on federal courts. The applicable federal law will be analyzed the same way regardless of the forum. Id.

SWS argues that the fourth factor is neutral because plaintiff originally filed this lawsuit in Ohio. Regardless of plaintiff's earlier filing, Washington still has a substantial interest in adjudicating this dispute because plaintiff is a Washington resident who alleges tortious injury due to the conduct of another. See, e.g., CE Distrib., LLC, 380 F.3d at 1112. This factor weighs in plaintiff's favor.

The fifth factor focuses on the availability of evidence; the Ninth Circuit has "looked primarily at where the witnesses and evidence are likely to be located." Menken v. Emm, 503 F.3d 1050, 1060-61 (9th Cir. 2007). SWS has explained that its three primary witnesses are residents of Illinois. Plaintiff is likely the sole resident of Washington, and she admits that her business activities take her "throughout the United States and Asia," including to the Chicago area for craft shows. Amended Complaint at ¶¶ 15, 20-21, 53. Therefore, this factor weighs in defendant's favor. However, because of advances in travel, this factor does not weigh heavily. Toeppen, 141 F.3d at 1323-24. The sixth factor is neutral because this Court and the Northern District of Illinois can both provide effective relief. Although this forum is more convenient for

plaintiff, her convenience is "not of paramount importance." Menken, 503 F.3d at 1061. It appears that the Northern District of Illinois would also be a convenient forum for plaintiff because of her travel there. This factor weighs slightly in plaintiff's favor. Finally, the Northern District of Illinois is an appropriate alternate forum, which weighs in defendant's favor. However, based on the limited record, it is unclear whether all defendants would be subject to personal jurisdiction in the Northern District of Illinois. Balancing all of the factors, SWS has not presented a "compelling case" that jurisdiction is unreasonable. Instead, SWS purposefully availed itself of conducting business in Washington by selling and shipping its products here, plaintiff's claims arose out of that conduct, and exercising jurisdiction over SWS is reasonable. Therefore, the Court denies SWS's request to dismiss for lack of personal jurisdiction.

**C.     Lanham Act and State Law Claims.**

As an initial matter, defendants briefly contest whether plaintiff's floral shapes have been coyprighted. They note that plaintiff's copyright for The Paper Garden - Summer Blooms extends to the book's "text" and photographic content, and her copyright in Paper Bouquet covers only the book's text. Plaintiff does not contend that defendants reproduced or copied the text or the photographs in the books, but instead that they improperly used her designs, which appear in the books. Other than noting the issue, defendants do not support their contention that plaintiff does not hold a copyright in her designs, and that issue, on the limited record, is beyond the scope of this motion. At this point, plaintiff has sufficiently alleged that her designs are copyrighted.

Defendants also contend that plaintiff's designs become a useful article when used with a paper punch. However, the designs do not require the use of a paper punch. Among other things, the designs can be drawn or cut with scissors. Declaration of Susan Tierney Cockburn, (Dkt. #38-1) at ¶ 13. Therefore, at this point, the designs do not appear to be useful articles. See, e.g., Chosun Int'l v. Chrisa Creations, Ltd., 413 F.3d 324, 328 (2d Cir. 2005) (explaining that "if a useful article incorporates a design element that is physically or conceptually separable

ORDER REGARDING
MOTIONS TO DISMISS - 10

from the underlying product, the element is eligible for copyright protection.") (citing 17 U.S.C. § 101). Defendants also argue that the designs are not entitled to copyright protection because they have their origins in nature. Defendants have not shown that plaintiff's designs include only elements found in nature. Cf., Aliotti R. Dakin & Co., 831 F.2d 898, 901 (1987) (explaining that when examining similarity of expression between stuffed dinosaurs, no reliance should be placed on similarities "resulting from either the physiognomy of dinosaurs or from the nature of stuffed animals.").

Defendants also argue, "Considering that the flower shapes in question have their origins from objects in nature, then the *scenes a faire* doctrine precludes copyright protection." Motion at p. 18. However, plaintiff is not claiming copyright protection for the shape of certain flowers. Rather, she is claiming protection for the particular designs of those flowers as depicted in her books. Therefore, the doctrine is inapplicable in this case. In sum, the Court will not find the designs unprotected based on the current record.

### 1. Lanham Act Claim.

Plaintiff contends that the McGill Paper Blossoms line uses a trade dress that is confusingly similar to her products, and therefore the company has violated the Lanham Act. The statute prohibits certain unfair trade practices enumerated in its text:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). A plaintiff seeking to prove trade dress violation must "show that its trade

ORDER REGARDING
MOTIONS TO DISMISS - 11

dress is protectable and that defendant's use of the same or similar trade dress is likely to confuse consumers." Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 613 (9th Cir. 1989) (internal citation and quotation omitted). In contrast, a plaintiff can prove a copyright violation by showing that he or she owns the copyright and that defendant copied protected elements of the work. See, e.g., Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990). "Federal copyright law governs only copying." G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896, 904 (9th Cir. 1992).

Defendants contend that plaintiff's Lanham Act claims fails as a matter of law as duplicative of the copyright claim. Defendants correctly note that plaintiff's Lanham Act claim "restates and realleges" previous portions of her amended complaint, including her copyright infringement allegations. However, parallel copyright and Lanham Act claims are not per se improper. See, e.g., Nintendo of Am., Inc. v. Dragon Pac. Int'l, 40 F.3d 1007, 1011 (9th Cir. 1994). Rather, "[c]ourts limit application of the Lanham Act in areas traditionally occupied by copyright or where the copyright laws 'provide an adequate remedy.'" Blue Nile, Inc. v. Ice.com, Inc., 478 F. Supp. 2d 1240, 1244 (2007) (quoting Shaw, 919 F.2d at 1365).

In this case, although plaintiff's claims rely on some of the same facts, she is not only alleging that defendants copied protected elements of her designs. Rather, the Lanham Act claim includes additional elements that are not necessarily compensable as copyright violations: specifically, plaintiff alleges that, among other things, defendants' use of her copyrights "constitutes false designations of origin, and/or false representations that defendants' goods are sponsored, endorsed, licensed or authorized by, or affiliated or connected with Tierney Cockburn." Amended Complaint at ¶ 84. She further alleges that defendants are attempting to pass off their products as plaintiff's. Id. at ¶ 59. The amended complaint further contends that defendants are using plaintiff's methods, lay out, another "Susan," her tool choices, her flower choices, and even her name in one instance to give the false impression that SWS's products are hers. Id. at ¶¶ 28-58, Ex. Y. Those allegations may state Lanham Act claims but are not

necessarily cognizable as copyright violations. See generally, Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003) (discussing claims for false designation of origin and reverse passing off). Therefore, the Copyright Act may not provide an adequate remedy. Furthermore, as this Court noted in Blue Nile, courts typically resolve the issue of whether the Lanham Act and copyright claims overlap at the summary judgment stage rather than on a motion to dismiss. Blue Nile, Inc., 478 F. Supp. 2d at 1245. Accordingly, defendants' motion to dismiss the Lanham Act claim is denied.

### 2. State Law Claims.

Defendants move to dismiss plaintiff's state law claims as preempted. Section 301(a) of the Copyright Act contains a broad preemption provision:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in tangible medium of expression and come within the subject matter of copyright . . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

Under that provision, "[c]opyright preemption is both explicit and broad." G.S. Rasmussen & Assoc., Inc., 958 F.2d at 904. Despite that breadth, "if violation of the state right is predicated upon an act incorporating elements beyond mere reproduction or the like, there is no preemption." Id. (internal citation and quotation omitted). The Ninth Circuit has adopted a two-part test to determine whether a state law claim is preempted by the Copyright Act: (1) courts must first determine whether the subject matter of the state law claims falls within the subject matter of copyright as described by 17 U.S.C. §§ 102 and 103, and (2) courts must determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106. Laws v. Sony Music Entm't, Inc., 448 F.3d 1134, 1137-38 (9th Cir. 2006). As the parties agree, plaintiff's works, her designs set forth in her books, fall within the subject matter described by the Copyright Act. "For preemption purposes, ideas and concepts that are fixed in a tangible medium fall within the scope of copyright." Montz v. Pilgrim Films & TV, Inc., 2011 U.S. App. LEXIS 9099 at *11-12 (9th Cir. May 4, 2011).

ORDER REGARDING
MOTIONS TO DISMISS - 13

As for the second element, the Court must determine whether the state law rights plaintiff asserts are "equivalent to any of the exclusive rights within the general scope of copyright." Montz., 2011 U.S. App. LEXIS 9099 at *12 (9th Cir. 2011). "The extra element must transform the nature of the action." Laws, 448 F.3d at 1144; see also Del Madera Props. v. Rhodes & Gardner, 820 F.2d 973, 977 (9th Cir. 1987) (overruled on other grounds by Fogerty & Fantasy, Inc., 510 U.S. 517 (1994)) ("To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights."). Plaintiff has failed to identify any "extra element" present in her CPA claim. In fact, plaintiff's response does not address her CPA claim, which the Court construes, pursuant to Local Rule 7, as a concession that defendants' arguments regarding that claim have merit. Moreover, courts routinely hold that state law consumer protection act claims are preempted by the Copyright Act. See, e.g., Blue Nile, Inc., 478 F. Supp. 2d at 1249-50; Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc., 713 F. Supp. 2d 215 (S.D.N.Y. 2010) (finding preempted plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Business Practices Act that defendants were selling plaintiffs' products as their own). The amended complaint restates and realleges her previous allegations. Amended Complaint at ¶ 96. Although plaintiff also alleges that the public is likely to be confused because defendants are attempting to pass off plaintiff's products as their own, similar allegations have been found to be preempted. See, e.g., Kodadek v. MTV Networks, Inc., 152 F.3d 1209 (9th Cir. 1998) (citing M. Nimmer & D. Nimmer, 1 Nimmer on Copyright, §1.01(B)(1)(e) at 1-24, n.110 ("stating that if B is selling B's products and representing to the public that they are B's products, a claim by A that B's products replicates A's is a disguised copying infringement claim and is preempted.")). Because plaintiff has failed to allege any extra element, her CPA is dismissed as preempted.

Although neither party has cited any cases applying Washington trade dress law, the Court will assume, as the parties did, for purposes of this motion that a state law trade dress claim is available. For the same reasons that the Lanham Act claim is distinct from the

ORDER REGARDING
MOTIONS TO DISMISS - 14

1  Copyright Act claim, the Court finds that plaintiff's state law trade dress claim, if available, is
2  not preempted.

3  Defendants also contend that plaintiff's Washington state law trade name claim is
4  preempted. Plaintiff claims that SWS violated her trade names by using copies of her
5  copyrighted works, including the names of her "creations," the terms for her methods of creating
6  the flowers, and the name "Paper Blossoms." Amended Complaint at ¶ 114; Response at p. 16.
7  However, those names and terms are used in her copyrighted works. Plaintiff's state law trade
8  name claim based on those words is not based on any rights that are qualitatively different from
9  rights protected by copyright. Therefore, any claim based on the misuse of those names is
10 preempted. Moreover, although plaintiff claims that defendants violated her trade name by using
11 "a new 'Susan,'" Response at p. 16, she has not alleged, nor could she, that the common name
12 "Susan" is her trade name. However, plaintiff has also alleged that defendants have used her
13 own name. The use of own's own name is not among or equivalent to the rights set forth in 17
14 U.S.C. § 106. See, e.g., Downing v. Abercrombie & Fitch, 265 F.3d 994, 1004 (9th Cir. 2001)
15 ("A person's name or likeness is not a work of authorship within the meaning of 17 U.S.C. §
16 102."). In contrast, in the case on which defendants' rely, the "essence" of the plaintiff's claim
17 was that the defendants "reproduced and distributed the DVDs" in which plaintiff appeared as an
18 actor "without authorization." Jules Jordan Video, Inc. v. 144942 Canada, Inc., 617 F.3d 1146,
19 1155 (9th Cir. 2010). Therefore, plaintiff's claim based on the alleged misuse of her own name
20 does not appear to be preempted.

21 Finally, defendants argue that plaintiff's state law constructive trust claim is preempted.
22 The amended complaint alleges that a constructive trust is warranted based on defendants'
23 violation of plaintiff's copyrights. Amended Complaint at ¶¶92-95; id. at ¶ 95 ("Tierney
24 Cockburn is entitled to the remedy of a constructive trust in view of Defendants' wrongful
25 infringement of Tierney Cockburn's Copyrights."). Although plaintiff contends that her
26 constructive trust claim is also based on her state law claims, the clear allegations in the

amended complaint belie that assertion. Accordingly, the constructive trust claim is dismissed as preempted. See, e.g., Gary Friedrich Enterprises, LLC, 713 F. Supp. 2d at 222 (holding that plaintiff's constructive trust claim "in connection with unauthorized use of copyrightable work" was preempted).

### III. CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss (Dkt. #31) is GRANTED IN PART AND DENIED IN PART. CreateForLess, LLC's motion to dismiss (Dkt. #35) is GRANTED. Plaintiff's claims against Archiver's, Moore, CreateForLess, LLC, and Notions are dismissed for lack of personal jurisdiction.

As for plaintiff's claims against SWS, her claims for constructive trust and violation of the Consumer Protection Act are dismissed as preempted. Plaintiff's state law trade name claim is dismissed in part as set forth above. The remainder of SWS's motion is denied.

DATED this 7th day of June, 2011.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge